### JENKINS v. LYKES BROS. S. S. CO., Inc., et al.
### Civil Action No. 2543.

District Court, E. D. Pennsylvania.

Feb. 12, 1943.

Abraham E. Freedman, of Freedman & Goldstein, of Philadelphia, Pa., for plaintiff.

John B. Shaw, of Krusen, Evans & Shaw, of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is an action brought by an American merchant seaman, a citizen of Pennsylvania, for damages and cost of maintenance and cure for personal injuries sustained in the course of his employment aboard a vessel owned and operated by the defendant, Lykes Brothers Steamship Company, Inc., hereinafter referred to as Lykes. Service of the summons and complaint was made by service on Charles Kurz & Company, Inc., hereinafter called Kurz, at the latter's office in Philadelphia, Pennsylvania. Lykes has moved to vacate the service on the ground that it is a foreign corporation not doing business in Pennsylvania and that Kurz was not its agent upon whom service would bind it.

In support of its motion defendant offered the deposition of an officer of Kurz as to the extent of defendant's operations in Pennsylvania and the extent of the services rendered to it by Kurz. From this deposition it appears that Lykes is a steamship company incorporated in Louisiana and maintains no office nor employees in Pennsylvania. Although not on a regular schedule, its ships have entered and left the Port of Philadelphia during the last ten years, and during a recent two year period thirty-five of its vessels have done so. Throughout this ten year period Kurz, which is engaged in the business of custom house broker, steamship agent and forwarder, has "handled" defendant's ships at Philadelphia on a ship to ship basis, being paid separately for each job. The services rendered by Kurz are to arrange for pilotage and towage; to see that the cargo is properly and promptly discharged and loaded; to assist in custom matters and to obtain custom clearances. Kurz also makes disbursements on behalf of Lykes for the towage and pilotage, for laundry, dockage, stevedore expense, and sometimes for advances to a master. Kurz is notified by Lykes when a ship is expected to arrive and its representatives are then on hand to render the above services and generally to do "anything else that might be necessary to turn the ship around."

The first contention of the defendant Lykes is that it is not doing business in Pennsylvania. It is conceded that if it is doing business, the fact that such business is purely interstate commerce does not render it immune to suit. International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479. In support of its contention Lykes relies principally on Green v. Chicago, B. & Q. R. Co., 205 U. S. 530, 27 S.Ct. 595, 51 L.Ed. 916, and Shambe v. Delaware & H. R. Co., 288 Pa. 240, 135 A. 755. In each of these cases the defendant railroad maintained an office and telephone and a number of employees in Philadelphia, but had neither tracks nor road-bed there, the principal work of the office force being the solicitation of freight for transportation. **In**

each case the service of process was held invalid, a distinction being made between the operations of a railroad necessary to its existence, i. e., the transportation of passengers and freight, and collateral or incidental acts, within which solicitation of freight and similar activities were classified. Under this distinction, however, Lykes is, qualitatively speaking, clearly doing business in Pennsylvania when it transports cargoes to and from Philadelphia, even though it maintains no offices here. Quantitatively speaking, the fact that it has been so engaged for a period of over ten years and that during a recent two year period thirty-five of its ships have called at the Port of Philadelphia is sufficient to constitute doing business in Pennsylvania as distinguished from mere occasional or sporadic activities. Cf. Cafasso v. Philadelphia & R. R. Co., C.C., 169 F. 887; The Hanover, D.C., 6 F.2d 335; Marcum v. Owens-Parks Lumber Co., D. C., 31 F.Supp. 748.

The second question is whether service on Kurz as Lykes' agent is legally sufficient to constitute service on Lykes. Under Rule 4(d) (7) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, service is valid if made "in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process * * * in an action brought in the courts of general jurisdiction of that state". By the Pennsylvania Act of April 8, 1851, P.L. 353, 12 P.S. § 1310, a foreign corporation having an agency in any county of Pennsylvania may be validly served by a service of a summons upon the "president, cashier, agent, chief or any other clerk, or upon any directors or agent" in such county.

Lykes contends that because of the limited nature of the duties of Kurz and because Kurz held no oral or written contract and operated on a ship to ship basis, with intervals of time between its services and without assurances of future representation, it cannot be deemed the agent of Lykes to receive process. While this argument is not without force, I am not convinced by it.

 The principal purpose of legislation requiring service to be made upon an agent would appear to be to render it reasonably certain that a defendant corporation will receive prompt and proper notice of the action thereby. If Lykes maintained its own employees in Philadelphia to perform the services rendered to it by Kurz in its business operations here, Lykes would, in my opinion, be subject to process served upon such employees. That it engaged Kurz to render the services for which it would otherwise have maintained employees in Philadelphia does not appear to change the factual situation with respect to the likelihood of its receiving prompt and proper notice of the action or in any other material respect sufficient to warrant a change in the legal consequences.

Motion to vacate service denied.