Martin J. MURPHY

v.

INTERNATIONAL FREIGHTING COR-PORATION, Inc. and A/S Sobral.

INTERNATIONAL FREIGHTING COR-PORATION, Inc.

v.

JARKA CORPORATION OF NEW ENGLAND.

A/S SOBRAL

v.

JARKA CORPORATION OF NEW ENG-LAND and the CUNARD STEAM-SHIP COMPANY, Ltd.

Civ. A. No. 57–533–F.

United States District Court
D. Massachusetts.

April 4, 1960.

Nathan Greenberg, Robert P. Malone, Francis H. Farrell, Boston, Mass., for plaintiff.

Arthur J. Santry, Putnam, Bell, Dutch & Santry, Richard D. Sears, III, Boston, Mass., for defendant, International Freighting.

Leo F. Glynn, Boston, Mass., for A/S Sobral.

Merritt J. Aldrich, Bingham, Dana & Gould, Sumner H. Babcock, Robert J. Hallissey, Boston, Mass., for Jarka Corp. of New England.

FORD, District Judge.

Defendant A/S Sobral moves for summary judgment on the ground that this action, not having been timely brought, is barred by the statute of limitations or by the doctrine of laches.

This action is one to recover damages for personal injuries suffered by plaintiff while working as a longshoreman on the vessel Bow Canada, owned by defendant Sobral. Plaintiff alleges negligence and failure to provide a seaworthy vessel. Plaintiff is a citizen of Maine and defendant is alleged to be a foreign corporation. The alleged accident occurred at Portland, Maine, on February 21, 1954. The vessel at that time was being operated under a charter to International Freighting Corporation, Inc., a corporation now dissolved, which was originally named as a defendant, the action against it having been subsequently dismissed by stipulation of the parties. The complaint in the present action was filed on May 27, 1957.

The courts are not in agreement as to the proper time limitation to be applied

in an action brought on the law side of the court to recover for injuries allegedly caused by the unseaworthiness of a vessel. While some courts have taken the position that since the action is one at law, and there is no applicable federal statute of limitations, the timeliness of the action is to be determined by application of the appropriate state statute of limitations, the more common view appears to be that since the right being asserted is one arising under maritime law, the admiralty doctrine of laches is to be applied. Oroz v. American President Lines, Ltd., 2 Cir., 259 F.2d 636; Henderson v. Cargill, Inc., D.C., 128 F. Supp. 119; Apica v. Pennsylvania Warehousing & Safe Deposit Co., D.C., 74 F. Supp. 819; D.C., 101 F.Supp. 575. In McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272, the Supreme Court, while holding that where an action for unseaworthiness is combined with an action under the Jones Act, 46 U.S.C.A. § 688, a court cannot apply to the action for unseaworthiness a state period of limitations shorter than the three-year period of limitations applicable to the Jones Act action, left open the question of the proper standard to be applied in an action on the law side of the federal courts to enforce an admiralty right not joined with a claim under the Jones Act.[1] The question need not be resolved here since plaintiff's action must be held to be untimely under whichever standard is applied.

The complaint on its face indicates that the action was brought over three years and three months after the date of the injury. The analogous Massachusetts statute of limitations applicable to actions to recover for personal injuries provides a limitation period of two years. Mass.G.L. Ch. 260 § 2A.

Plaintiff, however, relies on § 9 of that chapter which provides:

"§ 9. Suspension in Case of Non-Resident Defendant. If, when a cause of action hereinbefore mentioned accrues against a person, he resides out of the commonwealth, the action may be commenced within the time herein limited after he comes into the commonwealth; and if, after a cause of action has accrued, the person against whom it has accrued resides out of the commonwealth, the time of such residence shall be excluded in determining the time limited for the commencement of the action; but no action shall be brought by any person upon a cause of action which was barred by the laws of any state or country while he resided therein."

His argument is that § 9 applies because defendant was never within the Commonwealth during the period between the date of the accident and the commencement of the suit and that since plaintiff during this time resided in Maine, which has a six-year statute of limitations applicable to actions of this type, R.S.1954, c. 112, § 90, the two-year period provided by § 2A never began to run.

Defendant is a foreign corporation with no established place of business in Massachusetts. It has never filed with the Massachusetts Commissioner of Corporations and Taxation any of the papers required by Mass.G.L. Ch. 181 § 3 and § 5 of foreign corporations doing business in Massachusetts. In 1954 and 1955 vessels owned by defendant called at the port of Boston eight times. The Sprague Steamship Company acted during this period as the husbanding agent for the defendant at

1. A further possibility has been suggested, that of resorting by analogy to the three-year period of limitations under the Jones Act as being more appropriate than state limitations for application to similar rights arising under maritime law and producing greater uniformity than the use of varying state periods of limitation. See the concurring opinion of Mr. Justice Brennan in the McAllister case, 357 U.S. at pages 229, 230, 78 S. Ct. at pages 1206, 1207. However, even under this standard plaintiff's action here is still untimely.

Boston, performing such services as engaging pilots and towboats, handling the entering and clearing of the vessels, handling mail for the ship, arranging for needed stores, and other services which might be requested by the master. Sprague also accepted notices of customs and immigration penalties levied against defendant and filed bonds on behalf of defendant in connection with such proceedings. Sprague also solicited cargo for these vessels.

There was no evidence of any formal agreement appointing Sprague as agent to receive process on behalf of defendant. It appears that it was the regular practice of Sprague to accept service of process on behalf of the owners of vessels for which they acted as husbanding agents. The usual procedure when served with such process was to telephone the owner or someone representing him and on receiving approval to accept service.

In the present case plaintiff's attorney, shortly after being engaged by plaintiff, discussed plaintiff's claim with counsel who he believed represented defendants. In response to his inquiries he was told to have service made on Sprague. Service was made on Sprague, was accepted, and forwarded to defendant's counsel who in due course filed an answer to the merits.

Plaintiff argues that the visits of defendant's ships to Boston were infrequent and sporadic and hence would not constitute doing business in Massachusetts. The extent of the activity required to constitute doing business must be judged in the light of the nature of the business being done. Two of defendant's vessels were involved. During the years 1954 and 1955 for which evidence was offered, the Bow Canada made six visits to Boston and the Bow Brasil two. They were then engaged in long voyages to South American ports. In these circumstances it would seem that these visits show a regular course of conduct sufficient to constitute doing business in Massachusetts. Murphy v. Arrow Steamship Co., Inc., D.C., 124 F. Supp. 199; Szabo v. Smedvig Tankrederi A. S., D.C., 95 F.Supp. 519; Van Horn v. Waterman S.S. Corp., D.C., 71 F.Supp. 347. These regular visits of these vessels together with the solicitation of business in their behalf by an agent located here would seem to meet the standards for doing business required by the Massachusetts courts, that is, solicitation together with some other substantial activity. Jet Manufacturing Co., Inc. v. Sanford Ink Co., 330 Mass. 173, 112 N.E.2d 252.

In other jurisdictions it has been held that a husbanding agent's activities on behalf of the owner of a vessel are sufficient to make it the owner's agent for service of process. Murphy v. Arrow Steamship Co., Inc., D.C., 124 F.Supp. 199; Jenkins v. Lykes Bros. S. S. Co., Inc., D.C., 48 F.Supp. 848. Cf. George H. McFadden & Bros. v. The M/S Sunoak, D.C., 167 F.Supp. 132. More significant, however, is the fact that, although without formal written appointment, Sprague was accepted by defendant as its agent for service of process. When service was made on Sprague, defendant appeared to defend on the merits, raising no question as to whether it had been properly served or was subject to the jurisdiction of the Court.

The conclusion must be that during the relevant time following plaintiff's injury defendant was doing business in Massachusetts and had an agent here upon whom service of process could have been made. Hence the provisions of Mass.G.L. Ch. 260 § 9 are inapplicable and the action is barred under § 2A of that chapter.

■■ The essential elements of the defense of laches are that plaintiff has been guilty of inexcusable delay in bringing his action and that this delay has so prejudiced the defendant that he should not now be required to defend the action. In determining whether the action has been timely brought, the statutory period of limitations applicable in actions at law is resorted to by analogy. It is not, of course, to be applied mechanically, for the final decision must

depend on all the equities of the case. But plaintiff's failure to bring his action within the analogous statutory period creates a presumption that he has delayed without excuse and defendant has thereby been prejudiced. Wilson v. Northwest Marine Iron Works, 9 Cir., 212 F.2d 510; Morales v. Moore-McCormack Lines, Inc., 5 Cir., 208 F.2d 218; Kane v. Union of Soviet Socialist Republics, 3 Cir., 189 F.2d 303; Redman v. United States, 2 Cir., 176 F.2d 713.

Here nothing has been shown to excuse plaintiff's delay in bringing his action. He certainly knew of his injury and all the circumstances surrounding it. His injury consisted of a dislocated shoulder and a torn rotator. He was a person of sufficient intelligence and understanding to be expected to use the diligence of an ordinarily prudent person in asserting his claim. His injury in no way affected his mental capacity or rendered him physically unable to attend to his business affairs. He duly prosecuted his claim for benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. There is no suggestion here of any of the special circumstances which have been accepted in other cases as justifiable excuses for delay. Gardner v. Panama Railroad Co., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31; Loverich v. Warner Co., 3 Cir., 118 F.2d 690; Hughes v. Roosevelt, 2 Cir., 107 F.2d 901; Allred v. American President Lines, D.C., 119 F.Supp. 55. Yet there is no evidence that plaintiff did anything to assert his claim until sometime in May 1957 when he first consulted his attorney. Clearly this delay must be held inexcusable. Oroz v. American President Lines, Ltd., 2 Cir., 259 F.2d 636; Morales v. Moore-McCormack Lines, 5 Cir., 208 F.2d 218.

Defendant here received no notice of any claim against it by plaintiff until May of 1957. No notice was given to defendant or its agent of the occurrence of the injury at the time of the accident. International Freighting Corporation, Inc., the charterer of the vessel at the time of the accident, has since been liquidated. Defendant has sold the vessel and the purchaser has again resold it. Logs and cargo records and plans are no longer available to defendant. Defendant has been unable to determine with certainty the stevedore who loaded the vessel at its previous port of call, who might be liable to defendant, or who at least might be a source of information as to how the cargo was loaded and braced. This is a matter of substantial importance to the defense of the case since it is alleged that the collapse of a plank or brace was the cause of plaintiff's injuries. It must be found in the light of these facts that plaintiff's delay in bringing his action has seriously prejudiced defendant. On all the equities of the case it should be held that the action is barred by laches.

At the conclusion of the hearing and arguments on this motion of defendant, plaintiff filed a motion for transfer of the action to the District of Maine.[2] Plaintiff's counsel in argument made it clear that if this court after consideration should decide to deny defendant's motion for summary judgment, plaintiff preferred to try his case here and wanted his motion for transfer denied. What he does ask is that if the court should decide that defendant's motion should be allowed, then it should refrain from passing on the motion and instead grant the motion to transfer. The reason for this is that plaintiff thinks that in view of the fact that Maine has a six-year statute of limitations he might be in a more favorable position there to meet the defense of laches.

The defenses based on the statute of limitations and laches were added to defendant's answer by amendment on June

2. Plaintiff has recently filed a complaint in the United States District Court for the District of Maine against this same defendant on the same cause of action within the six-year period which he contends is available to him under the Maine statute. He appears, however, to have been unsuccessful in his efforts to make service on the defendant in that action.

12, 1958. If plaintiff felt he would be on safer ground in meeting these defenses in the federal court in Maine he had ample opportunity to move for a transfer of the case. Such a motion might have merited serious consideration if made in due time. But it certainly violates all concepts of efficient judicial administration for plaintiff to ask this court to hold a hearing of this motion, receive evidence, hear arguments and give the matter full consideration, and then if the result is going to be adverse to plaintiff, to send the case to another court for repetition of the whole proceeding on the chance that the result there might be more favorable to plaintiff. Plaintiff cannot keep his case here while the court is with him with the option of going elsewhere when the court is against him.

The motion to transfer the case to the District of Maine is denied. Defendant's motion for summary judgment is allowed and the action will be dismissed.