**IMPALA TRADING CORPORATION,**
Libelant,

v.

**HAWTHORNE LUMBER CO., Inc., and a certain cargo consisting of lumber now aboard THE S.S. TROPIC SEA, Respondents.**

United States District Court
S. D. New York.
Dec. 5, 1961.

Jacob Rassner, New York City, Donald D. Olman, Whitestone, of counsel, for libelant.

Dougherty, Ryan, Mahoney & Pellegrino, New York City, Thomas J. Short, New York City, of counsel, for respondents.

FEINBERG, District Judge.

Libelant, Impala Trading Corporation ("Impala"), a New York corporation, has brought a libel in rem and in personam against respondents, Hawthorne Lumber Co., Inc. ("Hawthorne") and a certain cargo consisting of lumber now aboard the S.S. Tropic Sea. Its action is for freight charges due and owing, detention charges and the reasonable cost of discharging the lumber. At the present time, the vessel is at anchor in Puerto Cortez, Honduras, with the lumber laden aboard. Libelant has petitioned for an order authorizing it to sell the lumber, with any funds derived from the sale to be deposited in court with authority to pay libelant therefrom "sums due them."[1]

The petition for sale was verified on October 6, 1961, and was originally re-turnable on October 31, 1961. Thereafter, it was adjourned to November 6, 1961. Requests were made by both parties to submit briefs, the last of which was served on or about November 20. Thereafter, a number of conferences were held to explore the possibility of settlement of portions of the controversy. These proved to be fruitless.

The libel alleges that in July 1961, respondent Hawthorne "entered into a contract with Compania de Navigacion Tropicana, S.A. ("Compania"), Impala Trading Corporation, Owners Agents" pursuant to which Hawthorne agreed to ship 225,000 board feet of loose Sawn Lumber from Puerto Cortez to other ports in the Caribbean. It further claims that the cargo was loaded and that immediately thereafter the sum of $5,088 became due and payable to Compania, Impala, Owners Agents. Hawthorne has refused to pay this sum and libelant claims, among other things, a maritime lien against respondents for the $5,088 as well as damages for detention charges and the reasonable cost of discharging the lumber.

The petition for sale alleges that the ship and cargo are in the hurricane zone and that action must be taken to dispose of the cargo and otherwise safeguard the ship to conserve the assets involved. Hawthorne has filed an answer to the libel which denies that any freight is due. It has also submitted an affidavit in opposition to the petition which states, among other things, that the vessel listed when the cargo was loaded aboard, that the vessel was unseaworthy and that this is the cause of any claims which libelant has. Hawthorne also sharply challenges the jurisdiction of this Court to issue any decree or order affecting the cargo.

Underlying the bare bones of the petition and answering affidavit, the following appears to be the basic situation. The cargo was loaded on the ves-

---

1. The petition for sale is brought by Impala and Rodolfo Pretto, individually and as president of Impala. The libel was brought by Impala.

sel early in August. Shortly thereafter, the vessel took a heavy list and some of the cargo had to be jettisoned in order to prevent possible further damage to the vessel. Since that time the cargo has remained on board and the ship has remained at Puerto Cortez. Hawthorne refuses to pay libelant anything and libelant refuses to give up possession of the cargo, although it, or the owner of the ship (who has not appeared in the proceeding), presumably would like the ship towed away for survey and possible repair.

■ The basic issue on consideration of the petition for sale is the Court's jurisdiction to grant the relief sought. On this point, it appears that Hawthorne's contention that this Court has no jurisdiction over the cargo is correct. The cargo has never been seized and brought into the custody of the Court in accordance with Admiralty Rule 10, 28 U.S.C.A., which provides that

"In all cases of seizure, and in other suits and proceedings *in rem*, the process, if issued and unless otherwise provided for by statute, shall be by a warrant of arrest of the ship, goods, or other thing to be arrested; and the marshal shall thereupon arrest and take the ship, goods, or other thing into his possession for safe custody, and shall cause public notice thereof and of the time assigned for the return of such process and the hearing of the cause, to be given in such newspaper within the district as the district court shall order; and if there is no newspaper published therein, then in such other public places in the district as the court shall direct."

See also Burns Bros. v. Long Island R. Co., 176 F.2d 950 (2 Cir.1949); Yokohama Specie Bank v. Chengting T. Wang, 113 F.2d 329 (9 Cir.1940).

In the Burns case, the Court of Appeals held that there was no jurisdiction to enter a decree in rem against a carfloat even if it were within the district, because there had been no arrest of the vessel as Admiralty Rule 10 requires. In the Yokohama case, the Court of Appeals for the Ninth Circuit held that even though a United States Marshal had boarded a ship and attached a monition to a bulkhead, cargo on the ship was not effectively seized and, therefore, no in rem jurisdiction over it had been obtained. In the present case, since neither the vessel nor the cargo are within the district, I conclude that the Court is without jurisdiction to enter an order authorizing the sale of the lumber.

Libelant urges various decisions as compelling a contrary view, principally United States v. Freights, etc., of the Mt. Shasta, 274 U.S. 466, 47 S.Ct. 666, 71 L.Ed. 1156 (1927); N. H. Shipping Corp. v. Freights of the s/s Jackie Hause, 181 F.Supp. 165 (S.D.N.Y.1960); Galban Lobo Trading Company S/A v. The Diponegaro, 103 F.Supp. 452 (S.D.N.Y. 1951). However, it does not appear that any of these cases support the conclusion that this Court can order a sale of cargo when both the cargo and the vessel are not presently in the district and have not been seized.

■ Even if the Court were to have jurisdiction, I do not think such relief should be granted on the record before this Court. The chief justification for it is the alleged danger to both the cargo and the ship remaining in status quo. However, Hawthorne is apparently as much interested in the cargo, if not more so than the libelant. Yet it does not urge that the cargo is in any danger. In fact, it opposes libelant's petition. Hawthorne's failure to press here for a means of releasing the cargo may, of course, be due to its desire to have the matter litigated in the courts of Honduras.[2]

2. Both parties have informed the Court that legal proceedings are underway in Honduras. Recent communications from

the parties are to the effect that a local court in Honduras may have taken jurisdiction of the controversy, although this

In addition, if there is danger to the ship, which allegedly needs repair, it would appear that the shipowner would be the party most properly concerned about this situation. Libelant alleges in its petition only that Compania, which is apparently the shipowner or time charterer, assigned to libelant the inchoate account receivable consisting of freight due from respondent. It does not appear from the record that libelant otherwise stands in the shoes of Compania. It would seem logical, therefore, that if the concern regarding the safety of the ship is warranted, Compania or someone with a proprietary interest in the ship would be urgently pressing for relief in this Court.

In addition, pending trial of libelant's main claims against respondent Hawthorne, it is quite apparent that if the cargo and the ship are really in danger, the cargo can be unloaded at Puerto Cortez and the ship towed away for repairs. This, of course, might result in libelant losing whatever lien it may have against the cargo since the lien is possessory. In light of the allegations in the petition that "the ship and cargo are both in jeopardy" and that any delay may result in irreparable damage not only to the vessel and its cargo but "to the lives and well-being of the crew and officers of the ship," this would appear to be not too large a price to pay.

Moreover, on the record before me there is a conflict as to whether Hawthorne is now liable to libelant in any amount and there is no evidence, in any event, that Hawthorne is not capable of paying any judgment which libelant may ultimately recover against it in the exercise of the in personam jurisdiction this Court concededly has over Hawthorne.

Finally, the fact that the charges and countercharges involving all parties may also properly be the subject of litigation in the jurisdiction where the ship and

the cargo presently are is not without weight.

In any event, for all of the above reasons, on the present record I would not exercise the Court's discretion to grant the extraordinary relief sought here even if I were of the opinion that the Court had jurisdiction to do so.

In its memorandum of law filed on or about November 15, libelant for the first time mentions the possibility of alternative relief; i. e., that Hawthorne be ordered to do nothing to interfere with the towing away of the vessel with the cargo on board. I do not feel it proper for the Court to grant this relief on the present record for the reasons indicated above.

For all of the above reasons, the petition for relief is denied, without prejudice, however, to libelant's right to seek by appropriate procedure a speedy determination of the issues raised in its main action.

So ordered.

is not clear. In any event, my decision is not based on any assumption that the

Honduras court has or has not taken jurisdiction and rendered an order.