**THYSSEN STEEL CORPORATION,**
Plaintiff,

v.

**FEDERAL COMMERCE & NAVIGATION CO., Ltd., "Carbogas" Societa Di Navigazione S.p.A., Penelope Shipping Co. and "John" Niarchos, Defendants.**

No. 67 Civ. 2857.

United States District Court
S. D. New York.
Aug. 7, 1967.

Yorkston W. Grist, New York City, for plaintiff.

Cichanowicz & Callan, New York City, appearing specially for defendant Penelope Shipping Co.

William P. Larsen, New York City, of counsel.

MANSFIELD, District Judge.

Plaintiff, Thyssen Steel Corporation ("Thyssen" herein) seeks, among other relief, an injunction compelling the defendant Federal Commerce & Navigation Co., Ltd. ("Commerce" herein), "Carbogas" Societa Di Navigazione S. p. A. ("Carbogas" herein), Penelope Shipping Company ("Penelope" herein), and Stavros Niarchos, to bring the S. S. World Mermaid into the port of Halifax, Nova Scotia, so that plaintiff may attain a security interest in the vessel.[1] The World Mermaid, which is owned and operated by defendants Penelope and Niarchos, collided on July 23, 1967 in international waters with the S. S. Giacinto Motta, which was carrying plaintiff's cargo and which is owned and operated by Commerce and Carbogas. As a result of the collision, the S. S. Giacinto Motta sank. The S. S. Mermaid, although damaged, presently is in international waters off Nova Scotia, or en route to Europe.

---

1. Plaintiff has not advised the Court how it would obtain this security interest once the ship proceeded to Halifax.

■ The original contention of defendant Penelope [2] is that this Court has never acquired personal jurisdiction over it. On July 28, 1967 a summons, complaint and order to show cause were served on Transoceanic Marine, Inc. which has admittedly served in the past as "husbanding agent" for Penelope. This agency entailed Transoceanic's arranging for berths, supplies and incidentals on the five occasions the S. S. Mermaid entered United States ports. While, on occasion, service on a "husbanding agent" has been held to be effective, Murphy v. Arrow S. S. Co., 124 F.Supp. 199 (E.D.Pa.1954); Jenkins v. Lykes Bros. S. S. Co., 48 F.Supp. 848 (E.D.Pa.1943); see Murphy v. International Freighting Corp., 182 F.Supp. 636 (D.Mass.1960), no court has ever so held on a record as bare as this. Granite Chemical Corp. v. Northeast Coal & Dock Corp., 249 F.Supp. 597 (D. Me.1966); see George H. McFadden & Bros. v. The M. S. Sunoak, 167 F.Supp. 132 (E.D.Va.1958). Plaintiff cannot show that the S. S. Mermaid made regular stops in the United States; or that the ship ever stopped in this District; or that Transoceanic was performing any service for Penelope at the time of service of process. See Granite Chemical Corp. v. Northeast Coal & Dock Corp., supra. Plaintiff contends, however, that, if given the opportunity to indulge in discovery, he would be able to establish such facts. Possibly he could. See River Plate Corp. v. Forestal Land, Timber & Ry. Co., Ltd., 185 F.Supp. 832 (S.D.N.Y. 1960); 4 Moore's Federal Practice ¶ 26.16[1]. For the purposes of this motion, however, the Court must on the record presently before it find that it lacks jurisdiction over Penelope. If plaintiff desires to pursue discovery for the purpose of establishing the existence of personal jurisdiction, it should do so by regular notice rather than by emergency order, in the absence of facts indicating the likelihood of success, which so far do not appear.

■ Even if there were jurisdiction over the person of Penelope, the motion must be denied on its merits for lack of jurisdiction over the subject matter, which is the S. S. World Mermaid, and it would be both unrealistic and unreasonable for a court to assume the existence of the power to grant such drastic preliminary relief before the plaintiff has even established its claim. On the contrary, existing authority is to the effect that the court cannot order a shipowner to harbor his ship, which is in international waters, in order that it might provide security for a plaintiff's unproven claim.[3] In Impala Trading Corp. v. Hawthorne Lumber Co., 200 F.Supp. 261 (S.D.N.Y.1961), Judge Feinberg, in holding that he could not compel the sale of cargo aboard a ship in Puerto Cortez, Honduras, which plaintiff claimed to be subject to its maritime lien and sought in order to "conserve the assets involved" as security to satisfy its claim, stated:

"The basic issue on consideration of the petition for sale is the Court's jurisdiction to grant the relief sought. On this point, it appears that Hawthorne's contention that this Court has no jurisdiction over the cargo is correct. The cargo has never been seized and brought into the custody of the Court in accordance with Admiralty Rule 10.

\* \* \* \* \* \*

See 4 Benedict, Admiralty § 613. The Advisory Committee's Note to Rule 1, F.R.Civ.P., however, rendered the continuing effect of this long established doctrine of admiralty unclear: "Just as the 1938 rules abolished the distinction between actions at law and suits in equity, this change would abolish the distinction between civil actions and suits in admiralty."

---

2. There is no question that defendant Carbogas and Commerce have not been served. There is an issue as to whether Stavros Niarchos has been served but he has not yet appeared to contest jurisdiction.

3. Defendant also contends that this Court may not grant plaintiff the relief it seeks since an admiralty court has no jurisdiction to issue such an equitable decree.

"In the present case, since neither the vessel nor the cargo are within the district, I conclude that the Court is without jurisdiction to enter an order authorizing the sale of the lumber."

■■■ Processes in rem and of maritime attachment represent an exception to the general rule that in the absence of statutory authorization a plaintiff may not have security for his claim until it is established and reduced to judgment. But these exceptions are predicated on the basis that the *res,* i. e., the ship, is within the court's territorial jurisdiction at the time of seizure.[4] Here the ship is outside of this Court's jurisdiction. To suggest that a defendant may be compelled to bring property into this or any other jurisdiction as a means of preserving it as security to satisfy a plaintiff's claim, is to put the cart before the horse or, perhaps more appropriately in this case, to put the barge before the tug. The plaintiff must first establish his claim before seeking such extraordinary relief.

■ Furthermore, plaintiff would be required to allege in its complaint that the S.S. World Mermaid is in the jurisdiction of the Court or will be during the pendency of the suit. Supplemental Rules for Admiralty and Maritime Claims, Rule C(2). This Rule clearly does not contemplate the ship's being brought within the jurisdiction of the Court by the process of the Court for the reason that such a holding would render the allegation mere surplusage. Any other decision would inevitably lead to a holding that a defendant in a civil suit would have to bring all his possessions into the district so that they could be attached. Such a complete emasculation of the limitations on the drastic remedy of attachment would be intolerable.

Plaintiff contends that this is an exceptional case in that the S. S. World Mermaid is about to sink—a fact which will deprive plaintiff of all security. Penelope, however, which is just as concerned over the S. S. World Mermaid as is plaintiff, apparently feels otherwise, stating by affidavit dated July 31, 1967 that the damage is minor and that the ship is seaworthy and well on her way to Europe. Plaintiff's apprehension may be unfounded, and in any event it must wait until the S. S. World Mermaid comes within the jurisdiction of the Court. This is the normal procedure in such cases. See Witham v. The James E. McAlpine, 96 F.Supp. 723 (E.D.Mich. 1951).

In view of the Court's lack of jurisdiction over the subject matter, the plaintiff's application for a default order against Stavros Niarchos, who did not appear to contest the jurisdiction, must be denied, without prejudice to the plaintiff's right to seek a default judgment on the complaint if Niarchos should choose not to answer, move, or otherwise plead with respect to the complaint within the time fixed by the Federal Rules.

■ Plaintiff seeks to amend his order to show cause to seek voluminous additional relief. There was no notice of this to Penelope until the day before the show cause order was returnable. It is difficult enough to meet the demands of a show cause order without having also to answer various other prayers for relief which were added as a mere afterthought the day before the motion was returnable. Furthermore, in the light of the Court's ruling, such relief, if it is to be requested, should be sought by motion on proper notice rather than by order to show cause.

Accordingly, the motion is denied.

So ordered.

---

4. See, e. g., Rule E, Supplemental Rules for Admiralty, and Maritime Claims and particularly subdivision (3) (a): *"Territorial Limits of Effective Service.* Process in rem and of maritime attach-
ment and garnishment shall be served only within the district," and the Advisory Committee's Note with respect to it.