UNITED NATIONS CHILDREN'S FUND, Libellant,

v.

S/S NORDSTERN, her boilers, engines, etc., Sabre Shipping Corporation, Sabre Line and C. Mackprang, Jr., Respondents.

United States District Court
S. D. New York.

Nov. 23, 1965.

Supplemental Opinion April 1, 1966.

834

Zock, Petrie, Sheneman & Reid, New York City, for libellant; Francis J. O'Brien, Howard M. McCormack, New York City, Advocates.

Kirlin, Campbell & Keating, New York City, for claimant-respondent, C. Mackprang, Jr.; Walter P. Hickey, New York City, Advocate.

Dougherty, Ryan, Mahoney & Pellegrino, New York City, for respondents

Sabre Shipping Corporation and Sabre Line; Robert J. Giuffra, New York City, Advocate.

LEVET, District Judge.

This is a libel in admiralty growing out of an alleged deviation by the S/S Nordstern, owned by C. Mackprang, Jr. (Mackprang) and under time charter to Sabre Shipping Corporation (Sabre). Libellant, United Nations Children's Fund (UNICEF), a shipper of goods on the S/S Nordstern, has libelled the ship in rem, and respondents Mackprang and Sabre in personam. Mackprang cross-claims against Sabre, the charterer, should Mackprang be held liable to libellant.

Respondent Sabre is currently undergoing an arrangement pursuant to Chapter XI of the Bankruptcy Act (11 U.S.C. § 701 et seq.). On December 18, 1964, Hon. Edward J. Ryan, Referee in Bankruptcy, signed an order in that proceeding which provided, inter alia:

> "ORDERED, that any and all persons hereby are stayed, restrained, and enjoined from proceeding in any Court wherein the above named debtor [Sabre Shipping Corporation] is a defendant until final decree in the above entitled proceedings or until further order of this Court * * *."

This order was pursuant to 11 U.S.C. § 714.

Libellant now moves for summary judgment against all respondents. Respondent Mackprang moves for summary judgment on its cross-claim against Sabre, in the event it is held liable.

No application for a modification of the restraining order has been made to Referee Ryan, though this is the procedure implicitly approved in In re Laufer, 230 F.2d 866 (2d Cir. 1956). This court, therefore, feels constrained to respect the Referee's order, and to decline to entertain the motions for summary judgment against Sabre. The only motions properly before the court, therefore, are motions for summary judgment by UNICEF against the S/S Nordstern in rem, and against Mackprang, the owner, in personam.

The undisputed facts are as follows:

1. At all times herein relevant the S/S Nordstern was owned by Mackprang.

2. At all times herein relevant the S/S Nordstern was under time charter to Sabre. This time charter was for a period of from eight to twelve months.

3. The time charter provided that the vessel was to be employed in carrying lawful merchandise "between safe port and/or ports in Worldwide trading within [certain broad territorial limits not relevant here] as the Charterers or their Agents shall direct," on the following conditions, among others:

> "8. * * * The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency, and Charterers are to load, stow and trim the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, in conformity with Mate's or Tally Clerk's receipts."

> "9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments."

> "11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing * * *." [1]

---

[1] The time charter, denominated as such, was a standard form, approved by the New York Produce Exchange, November 6, 1913, as amended through October 3, 1946, with some additions by the parties. For the standard form, see Gilmore and Black, The Law of Admiralty (1957 ed.), Appendix C.

4. On or about June 30, 1961 there were delivered at Baltimore, Maryland to the S/S Nordstern certain shipments of DDT belonging to UNICEF, libellant herein.

5. In return for these goods a printed bill of lading under the heading and insignia of "Sabre Line" was issued to UNICEF. The bill of lading provided that the port of discharge from the S/S Nordstern of the DDT was to be Karachi (Pakistan). The bill of lading closed with the following recital:

"In witness whereof, the carrier by its agent has signed 3 (three) bills of lading, all of the same tenor and date, one of which being accomplished, the others to stand void.

SABRE LINE
Division of
Sabre Shipping Corporation
By TERMINAL SHIPPING
CO.—AGENTS
By W. BOLDOWSKY"

It is to be noted that the Captain did not sign the bill of lading.

6. The S/S Nordstern sailed from Baltimore with the aforesaid cargo aboard.

7. The DDT was not discharged at Karachi, but rather at Calcutta, where the voyage was terminated. This was done pursuant to order of Sabre sent by cable to Sabre's agent in Calcutta, and relayed by him to the ship. The owner of the vessel was not consulted with regard to the termination or the discharge of the cargo. The decision to terminate and discharge the cargo is admitted to have been made by Sabre solely for business purposes and not as a result of stress of weather or damage to the vessel.

■ It is clear from the statement of facts that there was a deviation by the vessel from the voyage agreed upon.

The ship never went to Karachi and the goods were unloaded at Calcutta. However, not all deviations carry with them liability for damages. It is only "unreasonable" deviations which carry with them such damages. The Wildwood, 133 F.2d 765 (9th Cir.), cert. denied 319 U.S. 771, 63 S.Ct. 1436, 87 L.Ed. 1719 (1943); Surrendra (Overseas) Private, Ltd. v. S.S. Hellenic Hero, 213 F.Supp. 97 (S.D. N.Y.), aff'd per curiam 324 F.2d 955 (2nd Cir. 1963). The deviation herein was prima facie unreasonable. Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq. (§ 1304(4)).[2] The undisputed facts of this case, with the deviation admitted to have been made solely for "business reasons," clearly show the deviation to have been unreasonable. The question becomes, then, whether the ship and the owner, or either of them, is liable for the damage thereby sustained.

■ Considerable research has led us to the conclusion that the ship is liable in rem for the damages sustained as a result of the deviation, even though her master did not sign the bill of lading. It was early said:

"A charter-party is the hiring of the whole or a part of a vessel, for the transportation of merchandise or passengers; and if it does not, ex vi termini, convey a proprietary interest, it certainly does pass a claim or interest in the vessel, recognized by the maritime law, the privilege to look upon her as answerable for the goods placed on board. That she is answerable for them, and they to her, is a well-settled and universal rule of law; and the parties, when they enter into the contract, are presumed to do so with knowledge of the lien implied by law from the terms and character of the instrument they make. * * *"[3]

Only a few cases in which the factual situation herein has arisen have been

2. The goods herein were transported subject to this Act both under the explicit terms of the statute, 46 U.S.C. § 1300, and under the terms of the bill of lading covering the goods.

3. Vandewater v. The Yankee Blade, 28 Fed.Cas. 980 (No. 16,847) (C.C.S.D.Cal. 1855), aff'd 60 U.S. (19 How.) 82, 15 L.Ed. 554 (1856).

found. All held the ship liable. The first of these is The Blandon, 287 F. 722 (S.D.N.Y.1922). There Judge Learned Hand held that the ship was liable in rem to a shipper for the delay in the arrival of goods at the port of destination occasioned by a deviation. This was held in spite of the fact that the bill of lading under which the goods were shipped was signed by the time charterer of the vessel, not by the master or owner. Judge Hand held that once the voyage has commenced, the bill of lading, though signed by the charterer only, is "the measure of the ship's duty."

Again, in The G. A. Tomlinson, 293 F. 51 (W.D.N.Y.1923), it was held that libellant, a shipper of goods, could recover in rem against the ship where the ship delivered the goods at a location in Buffalo other than that specified in the bill of lading under which the goods were carried. The bills of lading had been signed by the charterer, "The Tomlinson Company, Agents." It was held that the master having accepted the goods over the rail of the ship, the ship was bound by the terms of the bills of lading, regardless of the fact that neither master nor owner had signed them.

Finally, in The Muskegon, 10 F.2d 817 (S.D.N.Y.1924), Judge Goddard held the ship bound by bills of lading issued by a charterer, although neither master nor owner had signed them. Once the ship left with the cargo, there was a ratification of the bills of lading. See also The Poznan, 276 F. 418 (S.D.N.Y.1921) (L. Hand, J.), discussed below.

It is true that most of the cases above cited Judge Manton's discussion of the subject in The Esrom, 272 F. 266 (2nd Cir. 1921). There Judge Manton, in one of three opinions for the court, spoke at 272 F. 266, 271, 272 of "a ratification and adoption by the ship of the charterer's contract with the shipper" once the ship has "broken ground." The court

held there, however, that the ship was not liable for delay in sailing. There was no single opinion for the majority, one judge basing his opinion on the reasonableness of the delay, another on the binding character of the charter contract to sail "[when] a full cargo was secured." Judge Ward dissented. Later, in The Capitaine Faure, 10 F.2d 950, 967 (2nd Cir. 1926), the Second Circuit pointed out that in The Esrom, supra, the goods had been removed before sailing, and that therefore Judge Manton's words were dictum. The court concluded, 10 F.2d at 967:

> "In saying what we have in reference to that portion of Judge Manton's opinion relating to the ratification of the charterer's bill of lading by the ship's breaking ground with the goods on board, we do not wish to be understood as expressing any opinion either favorable or unfavorable thereto. That question simply was not in this case, and it was not in the Esrom Case."

The court then went on to hold the ship liable in rem to shippers whose bills of lading were signed by the charterer and ratified either in writing or orally by the master, for the nonsailing of the ship. This was held although the ship never "broke ground," in Judge Manton's language.

To the court's knowledge, no further cases have dealt with the point herein concerned. The decisions in the district court discussed above, however, were, as we have said, closely in point. They did impose liability in rem. And in this court's opinion, those decisions make good sense. Once the voyage has begun, the goods are beyond the shipper's control. It seems eminently reasonable to hold that the ship has a duty to deliver them to the destination provided in the bill of lading being carried by the ship.[4] Nor does this conflict with other ad-

---

4. This is even more reasonable where, as here, the master knew that under the bill of lading he was to proceed to Karachi. See deposition of Focke Eidtmann, pp. 15, 16, 25.

Of course, my statement above excepts "reasonable" deviations. See discussion, p. 836, supra.

miralty practice. See generally Gilmore and Black, The Law of Admiralty (1957 ed.), Chapter IX; 1 Benedict on Admiralty (6th ed. 1940; Knauth ed.), Chapter III. Cf. Turner v. United States, 27 F.2d 134 (2nd Cir. 1928). Indeed, the maritime lien and the proceeding against the ship itself do seem "the best and surest pledge for the compensation and indemnity to the injured party."[5] We hold the S/S Nordstern liable in rem for the damages suffered by libellant as a result of the deviation.

This brings us to the final point in the case, the in personam liability of the shipowner for the deviation. No cases have been found which impose such liability on the shipowner under the circumstances herein. It is all very well to say, as in The Themis, 275 F. 254, 262 (2nd Cir. 1921):

"* * * But when (Barbar & Co.'s authority to sign for the master being undisputed) the master of a ship chartered but not demised, which was the condition of Themis, issues bills of lading, we hold that the contract evidenced thereby is not only the ship's contract, and that of the time or other charterer who caused their issue, but that of the owner, whose master (i. e., authorized agent) issued the same."

However, no signature "for the master" appears in this case. The case seems somewhat similar to The Poznan, 276 F. 418 (S.D.N.Y.1921) (L. Hand, J.), in which liability in rem was imposed on the ship, liability in personam was imposed on the charterer, but no liability was imposed upon the owner, who had not purported to sign. All bills had been issued in the charterer's name. And, in that case, the charter was for even a more limited period than here, being only a voyage and return charter. The case is, however, distinguishable from the present one in that the master there was not authorized to sign bills of lading, though he in fact did sign a few in the charterer's name.

■ The provision in the charter party in the present case, providing for the master's signature on bills of lading, should not, it seems to us, affect the outcome when the bill of lading was not executed by the master. No one was here misled. The libellant well knew that it was dealing with a time charterer. (See affidavit of T.A.D. Adamowski, p. 2) It accepted a bill of lading from the charterer,[6] obtaining neither the owner's bill nor that of the master. As is said in Scrutton on Charterparties and Bills of Lading (17th ed. 1964), p. 51, speaking of the relationship between

---

5. 1 Benedict, supra, p. 20. And the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq., enacted in 1936, does not appear to have changed the law with respect to the liability of the ship. Cf. Compagnie De Navigation Fraissinei & Cyprien Fabre, S.A. v. Mondial United Corp., 316 F.2d 163, 172–173 (5th Cir. 1963).

6. The allegations in libellant's libel and statement pursuant to Rule 9(g) of this Court, though somewhat ambiguous, may allege that the signer of the bill of lading had authority to sign for the owner and/or the master. No specific facts or affidavits are produced to substantiate this, however. (The affidavit of libellant's New York attorney, while made on "personal knowledge," is conclusory and unenlightening on this point. And the libellant's Notice to Admit sent to

both Sabre and Mackprang in pertinent part provided:
"2. In return for receipt of the goods and as the contract of carriage, the respondents Sabre Shipping Corporation and Sabre Line issued a bill of lading dated June 30, 1961 numbered Karachi 2, a true copy of which is attached hereto as Exhibit A."
"4. The owner of the S.S. NORDSTERN at the time of these shipments was C. Mackprang, Jr."
Both Sabre and Mackprang admitted these matters in all material part.) In the face of the bill of lading which was executed as set forth in the opinion, the libellant's mere allegations, if they are so intended, are insufficient to raise a genuine issue of material fact on this point. See Dressler v. MV Sandpiper, 331 F.2d 130 (2nd Cir. 1964).

shippers of goods and owners of the ships under time charter:

"\* \* \* In some cases there will be no contract with the shipowner, but only with the time charterer [d]; \* \* \*."

"d. [Citations omitted.] This may well be so where the time charterers are proprietors of a line of steamers and issue a bill of lading in the form of their line signed by themselves; cf. Herman v. Royal Exchange Shipping Co. (1884) C. & E. 413; The Okehampton [1913] P. 173; and Bathgate v. Letricheux. Lloyd's List, March 18, 1919."

This we believe is the situation here.[7] Cf. Samuel v. West Hartlepool Steam Nav. Co., 11 Com.Cas. 115 (1906); 1 Carver, Carriage by Sea, § 414 (11th ed. 1963). Upon the facts of this case, with no implication as to the outcome of other cases with different facts, we hold that no in personam liability extends to the shipowner for the deviation.

No genuine issues of material fact exist.

Libellant's motion for summary judgment against the S/S Nordstern is granted.

Libellant's motion for summary judgment against C. Mackprang, Jr. is denied.

■ Summary judgment is granted in favor of C. Mackprang, Jr. on the libel of United Nations Children's Fund against C. Mackprang, Jr.[8]

No action is taken on libellant's motion for summary judgment against Sabre Shipping Corporation, or upon respondent C. Mackprang Jr.'s motion for summary judgment against Sabre Shipping Corporation, and no determination of the rights of the parties thereon is made.

The case is to be referred to a Commissioner for a determination of damages.

Settle order and judgment on notice.

## Supplemental opinion

Now before the court are motions for summary judgment by libellant, United Nations Children's Fund, against Sabre Shipping Corporation (hereinafter "Sabre"), also sued as Sabre Line, and by C. Mackprang, Jr., owner and claimant of the S/S Nordstern, on his cross-claim against Sabre.

On a previous motion in this case, the court granted summary judgment in favor of libellant against the S/S Nordstern by reason of damages caused by the failure to discharge libellant's goods at Karachi, Pakistan, as required by the bill of lading. While my previous decision placed liability on the ship for the above deviation, no determination was made on libellant's motion for summary judgment against Sabre, the charterer, or on Mackprang's motion for summary judgment on his cross-claim against Sabre because at the time of the previous motion, proceedings against Sabre were stayed by an order, dated December 18, 1964, of Edward J. Ryan, Referee in Bankruptcy. This stay has now been lifted so that the action may proceed against Sabre, although no proceedings

7. Nor does the Carriage of Goods by Sea Act, supra, require any different result. In the first place it has been said: "The fundamental character of the bill of lading is not changed by incorporation of the statutory provisions of the Act," Weinfeld, J. in Jones v. The Flying Clipper, 116 F.Supp. 386, 388 (S.D. N.Y.1953). Secondly, the Act itself provides in 46 U.S.C. § 1301:

"§ 1301. Definitions

"When used in this chapter—

"(a) The term 'carrier' includes the owner or the charterer *who enters into a contract of carriage* with a shipper." (Emphasis supplied.)

Thus, the Act does not require us to hold that this was the owner's contract.

8. All the facts being before the court, it is unnecessary to wait for a formal motion for summary judgment by Mackprang. See Local 33, Int. Hod Carriers et al. v. Mason Tenders et al., 291 F. 2d 496 (2nd Cir. 1961); 6 Moore, Federal Practice (1953 ed.) ¶ 56.12 and cases cited therein. These authorities, dealing with Rule 56, Fed.R.Civ.P., are equally applicable to the analogous Admiralty Rule, Rule 58.

may be taken against any property of Sabre nor is execution to issue herein without order of the court. (See order of Edward J. Ryan, Referee in Bankruptcy, dated January 31, 1966, In the Matter of Sabre Shipping Corporation.)

■ The only opposition to libellant's original motion and to Mackprang's motion on his cross-claim was based on the above-mentioned stay, rather than on the merits. Proctors for Sabre in an affidavit of Robert J. Guiffra, sworn to February 14, 1966, have conceded "that there is no valid defense to the Motion of the libellant [United Nations Children's Fund] seeking summary judgment."

As to libellant's motion, there is no genuine issue of material fact, and libellant's motion for summary judgment against Sabre is granted.

Sabre now raises against Mackprang the defense that the matter involved in Mackprang's cross-claim against Sabre should be referred to arbitration in New York under Clause 17 of the Charter Party executed between Sabre and Mackprang. Mackprang asserts in reply that Sabre has waived its right to arbitrate.

■ The right to arbitrate and to stay trial of an action may be waived by dilatory conduct, and the trial judge has discretion to refuse to stay an action pending arbitration if he is of the opinion that the party seeking arbitration is in default. Radiator Speciality Co. v. Cannon Mills, Inc., 97 F.2d 318, 117 A.L.R. 299 (4th Cir. 1938); Cargo Carriers, Inc. v. Erie & St. Lawrence Corp., 105 F.Supp. 638 (W.D.N.Y.1952).

■ Here Sabre has waited until the resubmission of Mackprang's motion for summary judgment on his cross-claim to seek to enforce arbitration. The original libel in this suit was filed on May 16, 1962, and Mackprang's cross-claim was filed on July 31, 1963. Sabre never answered that cross-claim, nor did it assert any right to arbitration until this motion was brought on for determination by Mackprang on February 4, 1966. Sabre has thus let more than two and one-half years pass without doing anything to assert its rights to arbitration. In my opinion, Sabre's dilatory conduct is inconsistent with an intention to rely on arbitration and constitutes a waiver of its right to arbitrate.

I, thus, reach consideration of the merits of Mackprang's motion for summary judgment on his cross-claim against Sabre, which seeks to impose liability on Sabre both to indemnify Mackprang for the full amount of any liability to libellant of Mackprang or of his vessel, S/S Nordstern, and to pay Mackprang his attorneys' fees, costs and expenses incurred in defending the libel. Since I previously held the S/S Nordstern liable to libellant, liability on the cross-claim is in issue in this case.

The undisputed facts, as detailed in my opinion in this case, filed November 26, 1965, show—

(1) that the S/S Nordstern was under time charter to Sabre at all times relevant herein,

(2) that on July 30, 1961 Sabre, the charterer, issued a bill of lading for certain shipments of DDT, belonging to libellant, to be discharged at Karachi, Pakistan,

(3) that the DDT was not discharged at Karachi, but, rather, at Calcutta, India, where the voyage terminated,

(4) that such deviation was ordered by Sabre solely for business purposes and not as a result of stress of weather or damage to the vessel, and

(5) that Mackprang was not consulted with regard to the deviation.

■ It is clear that an obligation on the part of the charterer to indemnify the owner may be implied. Scrutton, Charterparties and Bills of Lading, 360 (17th ed. 1964); Carver, Carriage of Goods by Sea, 259 (10th ed. 1957). Cf. Lawlor v. Socony-Vacuum Oil Company, 275 F.2d 599, 84 A.L.R.2d 613 (2nd Cir.), cert. denied 363 U.S. 844, 80 S.Ct. 1614, 4 L.Ed.2d 1728 (1960). Since the deviation here occurred by reason of the express direction of Sabre, the

charterer, and since it is in no way primarily attributable to Mackprang or his ship, Mackprang is entitled to indemnity from Sabre. The present case is very similar to Strathlorne S.S. Co. v. Andrew Weir & Co., 40 Com. Cas. 168, 50 Lloyd's List L.R. 187 (C.A.1934). There, a charterer was held liable to indemnify the shipowner at common law irrespective of any provisions in the charter party where the charterer's agents instructed the Master to deliver cargo without production of the bill of lading, and Lord Hanworth said, quoting from Dugdale v. Lovering, L.R. 10 C.P. 196:

> "We think this evidence brings the case before us within the principle laid down in Betts v. Gibbins, (1834) 2 Ad. & E. 57, that when an act has been done by the plaintiff under the express directions of the defendant which occasions an injury to the rights of third persons, yet if such an act is not apparently illegal in itself, but is done honestly and *bona fide* in compliance with the defendant's directions, he shall be bound to indemnify the plaintiff against the consequences thereof."

Strathlorne S.S. Co. v. Andrew Weir & Co., supra, 40 Com. Cas. at 178, 50 Lloyd's List L.R. at 193. The same principles apply here.

As to Mackprang's cross-claim against Sabre, there is no genuine issue of material fact, and Mackprang's motion for summary judgment against Sabre is granted. Mackprang as claimant to the S/S Nordstern is entitled to indemnity from Sabre for any liability he has to libellant and for his attorneys' fees, costs and expenses in defending the libel.

An interlocutory decree will issue in favor of United Nations Children's Fund on its libel against the S/S Nordstern and Sabre Shipping Corporation. An interlocutory decree will also issue in favor of C. Mackprang, Jr. as claimant to the S/S Nordstern granting judgment on his cross-claim for indemnity against Sabre Shipping Corporation. The decree will provide for the appointment of a Commissioner to ascertain and compute the amount of damages of libellant, United Nations Children's Fund, and of respondent-claimant, C. Mackprang, Jr.

Submit interlocutory decree on notice in accordance herewith.