**TUBE PRODUCTS OF INDIA, Plaintiff,**

v.

**The S. S. RIO GRANDE, her engines, boilers, etc.,**

**and**

**Oriental Exporters, Inc. and Rio Grande Transport, Inc., Defendants.**

**No. 65 AD 54.**

United States District Court,
S. D. New York.

July 12, 1971.

————◆————

Symmers, Fish & Warner, New York City, for plaintiff; Frederick Fish, New York City, of counsel.

Burlingham, Underwood, Wright, White & Lord, New York City, for defendants Oriental Exporters, Inc. and Rio Grande Transport, Inc.; Guy E. C. Maitland, Gerard Harrington, Jr., New York City, of counsel.

## OPINION

COOPER, District Judge.

Plaintiff [1] was the consignee of cargo of steel coils loaded aboard the S. S. Rio Grande on October 11, 1963 at Baltimore, Maryland for carriage to Madras, India. The vessel was under time charter to American Asia Lines (American) from her owner Rio Grande Transport, Inc. (Transport). (Deft.Ex. A). Clause 8 of the charter, essentially the standard agreement approved by the New York Produce Exchange, provided that:

"The Captain (although appointed by the owner) shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, trim and discharge the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, in conformity with the Mate's or Tally Clerk's receipts, without prejudice to this Charter party."

Two clean bills of lading governing title to the coils were issued by American, one of the bills being signed by American "for the master." (Pltf.Ex. 4, 9). In the course of the voyage, for undetermined reasons, American unilaterally transferred the cargo to the S. S. Ponderosa, a vessel owned by American's affiliate Transasia Steamship Co., Inc. On arrival of the Ponderosa at Madras on January 15, 1964, plaintiff received short delivery of the cargo, the lost balance valued at $2,178.43.

The narrow issue presented in this litigation is whether under the above recited facts the vessel and her owner can be held accountable to plaintiff for this loss. Jurisdiction is based upon the United States Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq. and the general admiralty law, 28 U.S.C. § 1333. This opinion [2] constitutes our findings of fact and conclusions of law in accordance with Rule 52(a), F.R.Civ.P.

*Liability of the S. S. Rio Grande*

 We note at the outset the sparsity of reported decisions considering this aspect of maritime law.[3] Nevertheless, the liability of the vessel *in rem* appears clearly established. "A charter party is the hiring of the whole or a part of the vessel, for the transportation of merchandise * * * and if it does not, ex vi termini, convey a proprietary interest, it certainly does pass a claim or interest in the vessel, recognized by the maritime law, the privilege to look upon her as answerable for the goods placed on board." Vandewater v. The Yankee Blade, 28 Fed.Cas. p. 980, No. 16,847 (C. C.S.D.Cal.1855), aff'd, 60 U.S. (19 How.)

---

1. Upon the motion of the trustee in bankruptcy of American Asia Lines, Inc., and order of Judge Mansfield dated February 16, 1971, this action was dismissed, upon consent of all parties, as against the S.S. Ponderosa, American Asia Lines, Inc. and Transasia Steamship Co., Inc., pursuant to this Court's order of February 4, 1971.

2. Our Circuit's directive to give primary attention to criminal matters accounts for the somewhat belated disposition of this motion.

3. In United Nations Children's Fund v. S/S Nordstern, 251 F.Supp. 833 (S.D. N.Y.1968), Judge Levet carefully reviewed the cases involving this issue; it would serve no useful purpose to reexamine them here in detail.

82, 15 L.Ed. 554 (1956). This liability attaches (the bill of lading defining "the measure of the ship's duty and the cargo's privilege") irrespective of whether the vessel owner or master as well as the time charterer were signatories of the bill of lading. The Blandon, 287 F. 722 (S.D.N.Y.1922); The Themis, 275 F. 254, 262 (2d Cir. 1921). Additionally, courts have concluded that the ship's sailing constitutes the master's ratification of the bills of lading to the extent of assuming responsibility of the vessel to safely convey her cargo. The Muskegon, 10 F.2d 817 (S.D.N.Y.1924); Demsey & Associates, Inc. v. S. S. Sea Star, 321 F.Supp. 663 (S.D.N.Y.1970). "Once the voyage has begun, the goods are beyond the shippers control. It seems eminently reasonable [although the bills of lading were signed only by the charterer and not in a representative capacity "for the master"] to hold that the ship has a duty to deliver them to the destination provided in the bill of lading carried by the ship." United Nations Children's Fund v. S/S Nordstern, 251 F.Supp. 833, 836 (S.D.N.Y.1966).

■ However, liability may only be imposed if this Court acquires jurisdiction over the litigant sought to be held responsible. It is uncontroverted that plaintiff has not secured *in rem* jurisdiction over the Rio Grande: a warrant for the arrest of the vessel was never executed, Supplemental Admiralty Rule C(3), defendants have neither admitted the presence of the Rio Grande within this district during the pendency of the action nor consented to *in rem* jurisdiction. Trial Memorandum For the Defendants, December 17, 1970, p. 4. Accordingly, we are without power to grant plaintiff the relief it seeks as against defendant S. S. Rio Grande. Thyssen Steel Corp. v. Federal Commerce & Navigation Co., 274 F.Supp. 18 (S.D.N.Y.1967); Impala Trading Corp. v. Hawthorne Lumber Co., 200 F.Supp. 261 (S.D.N.Y. 1961); Burns Bros. v. Long Island Railroad Co., 176 F.2d 950 (2d Cir. 1949).

*Liability of Rio Grande Transport, Inc.*

■ Unlike our case law's clear pronouncement of liability of the vessel, the extent of responsibility of her owner in a time charter context is not free from doubt. It is apparent that if either the bills of lading were signed by the master or Transport expressly authorized the time charterer to sign such documents on its behalf, the vessel's owner could properly be looked to for damage suffered by a consignee of cargo. The Themis, *supra,* 275 F. at 262. On the other hand, if the bills of lading were signed only by the time charterer in a nonrepresentative capacity, the ship's owner is free from any responsibility based upon those bills. UNICEF, *supra,* 251 F. Supp. at 838; The Poznan, 276 F. 418 (S.D.N.Y.1921). Although the factual situation before us falls within the two examples, we conclude that the vessel owner cannot be held accountable for damage caused by the acts of the vessel's time charterer.

The master, Captain de Bozy, did not execute the bills of lading, and Transport did not authorize the charterer to sign them, on its behalf. (Tr. 16, 20). This Court in *UNICEF, supra,* 251 F.Supp. at 838 and *Demsey, supra,* 321 F.Supp. at 670, rejected the contention that the provision of the charter party, providing for the master's signature on the bills as presented, created any responsibility of the vessel owner by virtue of the form of bill of lading before us. Although in *UNICEF* the bills were not signed by the charterer "for the master," the three bills of lading involved in *Demsey* were so subscribed, and there the court declined to impose liability on the vessel owner on this basis. See also *The Poznan, supra.*

Where, as here, the bills of lading are not signed by the master, are on the form of the time charterer, a proprietor of its own line of "steamers" Scrutton on Charter Parties and Bills of Lading

(17th ed. 1964) p. 51, exercising unfettered discretion in the carriage of cargo, and where the loss of the cargo is attributable solely to the acts of the time charterer, we view Transport's alleged liability as an improper extension of the vessel owner's responsibility beyond that of its ship *in rem*. The apparent reasoning which underlined the court's ultimate disposition in *Demsey* is equally applicable here—the vessel owner's responsibility is to provide a seaworthy vessel "fitted for service," and only failing to satisfy this undertaking, and thus serving as a contributing factor in bringing about damage or loss of cargo, does it become accountable.

■ ■ The stipulation in the pretrial order as to the authenticity of the bills of lading does not preclude defendants from asserting that the charterer was without authority to sign the bills for the master. Receipt of the bills of lading by the master at the first port of discharge did not create retroactively apparent authority for the charterer to sign on his behalf, or ratify the representative capacity in which one bill was signed. These contentions were extraneous in determining the vessel owner's liability in either *UNICEF* or *Demsey*. Additionally, the ratification concept was recognized in both cases as a basis for imposing liability on the vessel.

Since it is uncontested that plaintiff has neither offered evidence nor suggested a theory sustaining liability of Oriental Exporters, Inc., (Defendants Post Trial Memorandum, February 3, 1971, p. 9), the action against it is dismissed.

### Disposition

For the reasons set forth above, the complaint of Tube Products of India is dismissed. The Clerk of this Court is directed to enter judgment in favor of defendants S. S. Rio Grande, Oriental Exporters, Inc., and Rio Grande Transport, Inc.

So ordered.