OTTO WOLFF
HANDELSGESELLSCHAFT, mbH,
Plaintiff,

v.

SHERIDAN TRANSPORTATION
COMPANY, et al.,
Defendants.

Civ. A. No. 92–cv–194.

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 18, 1992.

**1360**

David Neil Ventker, Huff, Poole & Mahoney, P.C., Virginia Beach, Va., for plaintiff Otto Wolff Handelsgesellschaft, mbH.

Denham Arthur Kelsey, Hunton & Williams, Andrew Jackson Timms, Hunton & Williams, Norfolk, Va., for defendants Sheridan Transp. Co.

## ORDER

CLARKE, District Judge.

This matter is before the Court on the Defendants' Motion for Summary Judgment. For the reasons stated below, Defendants' motion is GRANTED.

## FACTS

This is an *in personam* admiralty action brought by plaintiff, cargo claimant, against defendant, vessel owner, for damage to plaintiff's cargo of steel rebars allegedly sustained while en route on defendants' vessel from Norfolk, VA to San Juan, Puerto Rico in April 1990. Plaintiff purchased 5006.8 metric tons of deformed concrete reinforcing bars of new billet steel ("rebars") from Port Everglades Steel Corporation ("Port Everglades"), a steel exporter, as evidenced by a bill of lading dated April 2, 1990. On March 15, 1990, Port Everglades entered into a charter party with Sheridan Towing Company through its agent Sheridan Transportation Corpora-

tion ("Sheridan") for the charter of an unmanned barge, the James Sheridan. Port Everglades entered into an agreement with Otto Wolff to deliver the rebars to Puerto Rico using the barge it had chartered from Sheridan. Port Everglades had exclusive use of the barge during the term of the charter party. After Sheridan delivered the James Sheridan to Port Everglades, stevedores hired by Port Everglades loaded the cargo into the barge over several days. The defendants allege that it rained on and off during the loading, causing the ship's hold to become thoroughly wet. The bill of lading, issued by Port Everglades to Otto Wolff noted that at the time of loading, the cargo had "slight atmospheric rust."

After unloading the rebars in Puerto Rico, Otto Wolff complained to Sheridan that the cargo had suffered extensive amounts of rust and corrosion. When attempts to negotiate a settlement failed, Otto Wolff brought suit against Sheridan Transportation, the barge James Sheridan and the tugboat Peggy Sheridan ("the defendants"), alleging failure of the vessels and the crews to protect the rebars and to make the holds fit for the cargo. On March 6, 1992, plaintiff's counsel in filing the complaint advised the clerk that service on the barge James Sheridan and the tug boat Peggy Sheridan was not then requested. Neither vessel was ever served and both were dismissed as defendants by Order of August 5, 1992, more than 120 days having expired since institution of this action. Federal Rules of Civil Procedure 4(j). Otto Wolff is seeking $121,078.78 for its loss due to the diminished value of the cargo, and the cost of surveys, damage evaluations and miscellaneous expenses.

On June 18, 1992, Sheridan filed a Motion to Stay Pending Arbitration pursuant to Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Sheridan alleged Otto Wolff was subject to the provisions of the charter party between Sheridan and Port Everglades, including its arbitration provision, which were incorporated by reference into the bill of lading. Otto Wolff disagreed, arguing that the language of the charter party's arbitration clause could not bind a consign-

ee that was not a party to the charter party because it was expressly limited to disputes between "owner" and "charterer."

By Order dated July 22, 1992, the Court denied defendants' motion finding that there was no specific reference to arbitration in the bill of lading and the charter party's arbitration clause itself was limited to disputes between owners and charterers, of which Otto Wolff was neither. 800 F.Supp. 1353.

## MOTION FOR SUMMARY JUDGMENT

■ As a threshold matter, summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact. Further, the movant need not negate his opponent's case; he need only disclose the absence of evidence to support that case. *See White v. Federal Express Corp.*, 729 F.Supp. 1536, 1553–54 (E.D.Va.1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The party opposing a properly supported motion for summary judgment— here Otto Wolff—may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. The nonmoving party must introduce evidence to create an issue of material fact on "an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. There is "no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2505.

With these standards in mind, then, the Court now focuses separately on the merits of the various claims. In its August 6, 1992 Motion for Summary Judgment, Sheridan contends that there is no material issue of fact, and it is entitled to judgment as a matter of law because plaintiff has sued the wrong party in its claim for damages under the Carriage of Goods by Sea Act, 46 U.S.C.App. § 1300 *et seq.* ("COGSA"). Specifically, Sheridan argues that since it is not a "carrier" as defined by COGSA no *in personam* liability may attach to it under the act. It alleges that the contract of carriage with regards to Otto Wolff was the bill of lading issued by Port Everglades and that a "consignee can't sue a vessel owner who is not a party to the contract of carriage." Memorandum in Support of Summary Judgment at 5.

The parties agree that the liability, if any, of Sheridan is governed by COGSA. Otto Wolff further contends, and Sheridan denies, that if COGSA is inapplicable, then bailment law imposes liability on Sheridan. The Court will focus first on the COGSA claim.

COGSA sets forth the liability for and provides for the recovery of damages in cargo cases. It applies only to those charterers and shipowners who meet the definition of "carrier" contained in 46 U.S.C.App. § 1301(a), that is, those "who enter[ ] into a contract of carriage with the shipper." *In re Intercontinental Properties Management, S.A.*, 604 F.2d 254, 258 (4th Cir. 1979). A vessel owner can not be liable for cargo damage absent a contract of carriage with the claimant. *Id.* at 259 n. 4. The cargo owner has the burden of proof to show that the vessel owner is a carrier subject to COGSA. *Id.* at 258 (citations omitted).

A "contract of carriage" is one "covered by a bill of lading or any similar document of title. . . ." 46 U.S.C.App. § 1301(b). As between Sheridan, the vessel owner, and Otto Wolff, the cargo claimant, it "may either be direct . . . or by virtue of a charterer's authority to bind the owner by signing bills of lading "for the master." Basically Otto Wolff must present some evidence of a contract of carriage or other privity between it and Sheridan. *Intercontinental Properties*, 604 F.2d at 258. The

Supreme Court has set forth the following factors which may provide guidance in determining whether a vessel owner has carrier status thereby becoming liable for damages to a cargo claimant. The Court may consider:

1) Who advertised the service?

2) Who booked the cargo or, if the cargo was booked through an agent, on whose behalf did the agent act?

3) If the cargo was not delivered directly to the vessel, on whose behalf as the cargo received and stored prior to the loading?

4) Who hired the loading stevedores?

5) Whose name appears on the heading of the bill of lading?

6) On whose behalf was the bill of lading signed?

7) Who ultimately received from the shipper the remuneration for the transportation services?

8) Who selected the vessel which performed the carriage?

9) Who issued the notice of arrival or on whose behalf was the notice of arrival issued?

10) Who hired the discharging stevedores?

11) Who hired the clerks to tally the cargo off the ship?

12) If the cargo as not delivered directly from the vessel to the consignee, who stored the cargo or on whose behalf was it stored following discharge and pending delivery?

13) Who hired the clerks who delivered the cargo to the consignee and who issued the delivery receipts?

Geoffrey F. Birkhead, *Liability For and the Recovery of Damages in Cargo Cases,* in Southeastern Admiralty Law Institute Judicial Desk Book 4 (1990) (citing *Pendleton v. Benner Line,* 246 U.S. 353, 355–56, 38 S.Ct. 330, 331, 62 L.Ed. 770 (1918)). The two most important factors are the name on the heading of the bill of lading and the signature on the bill of lading. *See Trans–Amazonica Iquitos, S.A. v. Georgia S.S. Co.,* 335 F.Supp. 935, 940 (S.D.Ga.1971).

■ Construing these factors with the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, the Court finds no contract of carriage nor other privity of contract between Sheridan and Otto Wolff. Sheridan entered into a charter party with Port Everglades, the charterer, who independently, in its own name and at a later date issued a bill of lading to Otto Wolff. As Otto Wolff correctly asserts, both the vessel owner and the charterer may be potentially liable to the cargo owner if it is found they have entered into a contract of carriage with the shipper. However, it has failed to produce any evidence of one.

■ Otto Wolff argues that a contract of carriage was made between Sheridan and itself "by virtue of the charterer's authority to bind the owner by signing bills of lading 'for the master.'" Memorandum in Opposition to Motion for Summary Judgment at 5. Otto Wolff asserts that three provisions of the charter party granted this authority thereby creating a contract of carriage with Sheridan. It is settled law that the charter party defines the rights and liabilities of only the charterer and the owner. *Yeramex,* 595 F.2d at 946. It "is drawn up in brief and disjointed sentences; and must be construed according to the intent of the parties as manifested by the whole instrument, rather than by the literal meaning of any particular clause, taken by itself." *Crossman v. Burrill,* 179 U.S. 100, 107, 21 S.Ct. 38, 40, 45 L.Ed. 106 (1900). The vessel owner could, however, be liable to the cargo owner if the charter party gave the charterer authority to bind the shipowner to the contract of carriage with the consignee.

As a preliminary matter, Otto Wolff has admitted it had no knowledge of the charter party between Sheridan and Port Everglades and previously argued, and the Court agreed, that it was not bound by the terms of the charter party. Memorandum Order of July 22, 1992. These admissions notwithstanding, looking at each clause in the charter party individually, no contract of carriage between Otto Wolff and Sheridan can be found.

First, Otto Wolff claims paragraph 22a of the charter party, entitled "Limitation of Owner's Liability", "specifically states that Sheridan wanted to be viewed as a COGSA carrier" as to Otto Wolff. Memorandum In Opposition to Motion for Summary Judgment at 8. Otto Wolff is correct to an extent. Paragraph 22a (emphasis added) provides that:

> The Owner and the vessel in all matters *arising under this Charter Party* shall be entitled to the like privileges and rights and Immunities and shall be subject to the same responsibilities and liabilities as they would be entitled or subject to if the Charter Party were a contract or contract to which the Carriage of Goods by Sea Act of the United States approved April 16, 1936 applied and as if the Owner was a carrier and this Charter Party was a contract of carriage as defined by Section I of the said Act. The provisions of the said act (except as may be otherwise specifically provided herein) shall govern before the goods are laded on and after the are discharged from the vessel and throughout the entire time the goods are in the custody of the Owner or vessel.

The underscored language clearly indicates that Sheridan wanted to be viewed as a COGSA carrier in its relations with Port Everglades, not in regards to Otto Wolff. In addition to the language used, this follows from Otto Wolff's admissions and this Court's previous findings that Otto Wolff was not a party to the charter party in question. In fact, "[a]s to Otto Wolff, the bill of lading is the governing instrument." Otto Wolff Response to Request for Admission para. 2.

Second, Otto Wolff relies on the language of para. 17 which provides that "[t]he Vessel shall employ Owner's agents at loading and discharging ports." However, plaintiff does not contend it took any action with respect to this cargo, and Sheridan has, by sworn affidavit, indicated that Port Everglades hired the stevedores for loading and unloading the vessel. Otto Wolff has admitted it did not know who did so. Otto Wolff Response to Request for Admissions para. 14. Since "circumstances of solicitation and handling of cargo" are factors to be considered in determining whether a vessel owner has *in personam* liability under COGSA, Otto Wolff's reliance on this language alone does not create a contract of carriage. *Yeramex Internat'l v. S.S. Tendo et al.*, 595 F.2d 943, 948 (4th Cir.1979).

 Third, Otto Wolff argues paragraph 20 of the charter party grants Port Everglades authority to sign bills of lading on Sheridan's behalf thereby creating contract of carriage between them.[1] Otto Wolff's reliance on this language is of no consequence. To subject Sheridan to *in personam* liability under COGSA via the terms of the charter party, Otto Wolff must produce evidence that Sheridan granted Port Everglades authority *in fact* to sign bills of lading. *EAC Timberlane v. Pisces, Ltd.*, 745 F.2d 715 (1st Cir.1984). *Compare Yeramex*, 595 F.2d at 948 (charterer had no authority to bind vessel owner where court found "from dealings [with] both the ship's personnel and with third party shippers" that charterer "solicited carriage of the ... goods in its own name, holding itself out for all purposes as the principal contracting party") *with Pacific Employers Ins. Co. v. M/V Gloria*, 767 F.2d 229, 237 (1985) (evi-

---

1. The clause provides that

 [a]ll Bills of Lading signed by or on behalf of the Master or any other Agent of the Owner shall be without prejudice to the terms, conditions, and exceptions of this Charter Party and shall be subject to all such terms, conditions, and exceptions. *The Charterers shall indemnify the Owner from the consequences or liability which may arise from the Master or ship's Agent signing Bills of Lading or other documents inconsistent with this Charter Party or from any irregularity in papers supplied by the Charter or its Agent.*

 Charter Party para. 20 (emphasis added). Otto Wolff asserts this clause differs from the one in *Yeramex* which required the charterer to indemnify the owner "from *all* consequences arising out of the master or agents signing bills of lading." *Yeramex*, 595 F.2d at 947 (emphasis added). Otto Wolff claims this language, unlike that used in this case, "contains [a] wholesale prohibition of bills of lading signed by the agent." Memorandum in Opposition to Motion for Summary Judgment at 10.

dence in deposition indicated master had actual authority to bind the vessel owner to the terms of the bills of lading).

Paragraph 20 of the charter party does not impose a requirement that the charterer, Port Everglades, sign bills of lading on the vessel owner's, Sheridan's, behalf. The clause merely sets forth the consequences of such a signature. The unrefuted evidence is that neither master or any other agent of the owner, Sheridan, signed the bill of lading. It is clear that the bill of lading was signed on behalf of Port Everglades. Therefore, paragraph 20 was never triggered by any action by or on behalf of Sheridan.

The parties to the charter party could have agreed that the bill of lading would govern relations between the charterer-owner as well as the charterer-shipper. *See Nichimen Co., Inc. v. M.V. Farland,* 462 F.Supp. 319, 328 (2d Cir.1972). Port Everglades and Sheridan made no such agreement. Sheridan could also be liable to Otto Wolff under principles of agency law. The court must consider "the type of charter, who signed the bill of lading, whose form was used, and under whose authority the bill of lading was issued." Thomas J. Schoenbaum, *Admiralty and Maritime Law* 311 (1987) (citing *Joo Seng Hong Kong Co., Ltd. v. S.S. Unibulkfir,* 483 F.Supp. 43, 45–46 (S.D.N.Y.1979); *United Nations Children's Fund v. S.S. Nordstern,* 251 F.Supp. 833 (S.D.N.Y.1965); *Trans–Amazonica Iquitos, S.A. v. Georgia Steamship Co.,* 335 F.Supp. 935 (S.D.Ga. 1971)).

If the individual signing the bill of lading is found to be Sheridan's agent, Sheridan would be responsible under the theory of *respondeat superior. EAC Timberland v. Pisces, Ltd.,* 745 F.2d 715 (1st Cir.1984). Sheridan would not be liable *in personam* if it did not authorize the issuance of the bill of lading. *Dempsey & Assocs., Inc. v. S.S. Sea Star,* 461 F.2d 1009 (2nd Cir.1972); *Tube Products of India v. S/S Rio Grande,* 334 F.Supp. 1039 (S.D.N.Y.1971). A master-servant relationship can be evidenced by

1) an admission by the shipowner that the bill of lading was signed with proper authorization from the master, a representative of the shipowner;

2) the charter party [which] may establish the signer's authority through the shipowner or charter;

3) correspondence between the charter and the signer conferring the authority.

Birkhead at 3. As discussed above, none of these factors are present here.

In light of the above discussion, the Court finds a bareboat charter was made.

Under such arrangement[ ] full possession and control of the vessel are delivered up to the charterer for a period of time. The ship is then directed by its Master and manned by his crew; it makes his voyages and carries the cargo he chooses. Services performed on board the ship are primarily for his benefit. It has long been recognized in the law of admiralty that for many, if not most, purposes the bareboat charter is to be treated as the owner, generally called the owner *pro hac vice.*

*Reed v. The Yaka,* 373 U.S. 410, 412, 83 S.Ct. 1349, 1351–52, 10 L.Ed.2d 448 (1963); *Guzman v. Pichirilo,* 369 U.S. 698, 699, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962) ("To create a demise the owner of the vessel must completely and exclusively relinquish 'possession, command, and navigation' thereof to the demise.").

By affidavit Sheridan alleges a private contract between Port Everglades and itself under which Port Everglades "would load its own cargo aboard the barge and would have exclusive use of the barge during the term of the charter party." Declaration of Thomas J. Kelly at para. 4 (hereinafter "Declaration"); Charter Party at para. 8. Port Everglades, not Otto Wolff, chartered the barge from Sheridan and paid Sheridan. *Id.* at para. 9, 11. Port Everglades used its own form and is named in the heading of the bill of lading. Furthermore, Port Everglades signed the bill of lading which was issued under its authority. *Id.* at para. 6; Otto Wolff's Response to Request for Admissions at para.

4. Sheridan did not authorize anyone to issue a bill of lading on its behalf. *Id.* at para. 8. Port Everglades hired the loading stevedores in Norfolk, and Sheridan took no part in the loading or unloading of the barge. Declaration at para. 6.

■ These facts point to the creation of a bareboat charter between Port Everglades and Sheridan. Thus once perfected, Otto Wolff's sole remedies were against Port Everglades or the barge James Sheridan *in rem. Reed,* 373 U.S. at 412, 83 S.Ct. at 1351–52; *see also Dant & Russell, Inc. v. Dillingham Tug & Barge Corp.,* 877 F.2d 1404, 1406 (9th Cir.1989); *Agrico Chem. Co. v. M/V Ben W. Martin,* 664 F.2d 85, 91 (5th Cir.1981).

In response to defendants' motion, plaintiff has not submitted any affidavits, depositions or admissions to refute defendants' evidence.[2] He relies solely on the terms of the bill of lading and the charter party in this case. These documents "fail to meet the evidentiary standard necessary to create a genuine issue of material fact" sufficient to overcome a motion for summary judgment. *Rountree v. Vinson,* 933 F.2d 219, 223 (4th Cir.1991).

As explained above, the charter party is not a contract of carriage. Furthermore, the bill of lading issued by Port Everglades to Otto Wolff did not constitute a contract of carriage between Sheridan and Otto Wolff. As to itself, Otto Wolff has admitted that the bill of lading constitutes the only contract of carriage. Memorandum in Opposition to Motion to Stay Pending Arbitration at 2. More importantly, Otto Wolff has admitted that Sheridan "is not a party to the bill of lading ... nor [is it] an intended third party beneficiary of the bill of lading." *Id.* at 3.

In any event, the Court believes Otto Wolff's reliance on the bill of lading hinders rather than supports its COGSA claim against Sheridan. As said above, there is no privity between Otto Wolff and Sheridan in the bill of lading nor in the charter party. More importantly, Otto Wolff is precluded by judicial estoppel from asserting that Sheridan is a party to the bill of lading issued by Port Everglades.

Judicial estoppel applies where a party attempts to assert different positions or factual claims in the same proceeding.[3] As the Fourth Circuit has recently noted, "[a] party cannot have its cake and eat it too.... [J]udicial estoppel, or preclusion against inconsistent positions, is designed to protect the integrity of the courts and the judicial process." *Guinness PLC v. Ward,* 955 F.2d 875, 899 (4th Cir.1992). The doctrine applies

> where a party seeks to contradict his own sworn statements made in prior litigation in which he was a party or a witness.... [Courts will not] permit litigants to 'play fast and loose' with courts of justice according to the vicissitudes of self-interest....
>
> The preclusion rule has been held to operate regardless of whether the prior inconsistent position was successfully maintained; and irrespective of reliance by, or prejudice to, the party invoking it.

*Id.* at 899 (citations and footnote omitted).

■ The court agrees with petitioner Sheridan that Otto Wolff is attempting to assert inconsistent positions in this case. In its Brief Opposing Arbitration at 2 (June 29, 1992), Otto Wolff asserted that "the bill, not the charter, [was] the governing instrument" for a cargo claimant. Otto Wolff took this position again in an admission: "As to Otto Wolff, the bill of lading is the governing instrument." Otto Wolff Response to Request for Admission para. 2. Now however, in its Brief Opposing Summary Judgment at 2–3 (August 20, 1991), Otto Wolf has changed its mind claiming that "the terms of the Charter Party are *part* of the contract of carriage, which the bill of lading incorporates by reference." This is clearly contrary to what Otto Wolff argued when opposing

---

**2.** During arguments for summary judgment, Otto Wolff's counsel admitted to the Court that its time for discovery and for submitting affidavits had run.

**3.** The Court notes that pursuant to Federal Rules of Civil Procedure 8 and 11, a party may assert, in good faith, as many inconsistent *legal* claims it may have.

arbitration. There Otto Wolff strenuously argued that 1) the bill did not incorporate the charter party by reference and that 2) if it did then Otto Wolff had no actual or constructive notice of that incorporation. Brief Opposing Arbitration at 2. To quote Otto Wolff, "Sheridan Transportation Company is not a party to the bill of lading ... [l]ikewise, it is not, nor has it specifically claimed to be, an intended third party beneficiary of the bill of lading." *Id.* at 3.

■ Otto Wolff lastly claims in the alternative that if Sheridan is not liable to it under COGSA, then *in personam* liability attaches to Sheridan pursuant to bailment law. Although no formal contract is required to create a bailment, "lawful possession ... and a duty to account for the thing as the property of another" is necessary. *York v. Jones,* 717 F.Supp. 421, 425 (E.D.Va.1989). Physical control coupled with an intent to exercise control over the goods constitute possession. *Compare Morris v. Hamilton,* 225 Va. 372, 302 S.E.2d 51, 52 (1983) (guest at party who picks up watch from counter in attempt to return it to owner was a gratuitous bailee) *with K–B Corp.,* 237 S.E.2d 183, 185 (Va. 1977) (no bailment found where employer required employee to furnish his own tools but employee kept them in the office in a locked box to which only employee had the key).

In *Schnell v. The Vallescura,* 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373 (1934), the Supreme Court held that a vessel owner is liable to a cargo owner as a bailee when cargo is entrusted to his care and custody. Otto Wolff however misplaces it reliance on *Schnell.* In *Schnell,* the vessel owner and the charterer were the same party. *See id* at 301, 55 S.Ct. at 195. Thus the carrier was found to be "a bailee entrusted with the shipper's goods, with respect to the care and safe delivery of which the law impose[d] upon him an extraordinary duty [because] [d]ischarge of the duty [was] *peculiarly within his control.*" *Id.* at 304, 55 S.Ct. at 196 (emphasis added).

■ In this case, Sheridan had no control over the contract of carriage between Port Everglades and Otto Wolff. The

court agrees with Sheridan that bailments are contractual in nature, and that "the bill of lading is the contract of carriage" where a charterer issues one to a consignee. 2A *Benedict On Admiralty* § 34 at 4–13 (1992). The court finds no bailment between Sheridan and Otto Wolff where

1. Sheridan had no communication whatsoever with Otto Wolff.

2. No contract terms were negotiated between Sheridan and Otto Wolff, and no meeting of the minds ever took place between them.

3. Otto Wolff did not know of the existence of Sheridan's charter party with Port Everglades.

4. No money changed hands between Sheridan and Otto Wolff.

5. Otto Wolff did not even know Sheridan owned the barge.

6. Otto Wolff dealt exclusively with Port Everglades and paid Port Everglades the appropriate freight.

*See* Kelly Declaration para. 11; Otto Wolff Declaration para. 6, 10. Sheridan obviously had no intent to control the cargo on its barge, and Otto Wolff has not presented any evidence to rebut these sworn facts.

### CONCLUSION

Taking the facts in the light most favorable to plaintiff, clearly no issue for trial exists because there is no evidence upon which a jury could return a verdict for the plaintiffs. For *in personam* liability to attach to Sheridan, there must be some privity between it and Otto Wolff. The court finds neither a contract of carriage nor a bailment situation in this case. Otto Wolff could have sued Port Everglades under the bill of lading or the vessel *in rem.* It has not done so.

The evidence produced by defendants in the form of the documents herein discussed indicates no contract terms were negotiated between Sheridan and Otto Wolff and no meeting of the minds ever took place between them. Mere arguments of counsel and the pleadings are insufficient evidence to withstand a motion for summary judgment.

For the reasons stated above, the Court GRANTS defendants' Motion for Summary Judgment, and this action is DISMISSED with prejudice.